# JUDGE BUCHWALD

08 CV 4442

**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

Hilda Livermore, as Administratrix of the
Estate of her husband Oswald Livermore, and on
her own behalf,



Civ.

Plaintiff,

**COMPLAINT
AND JURY DEMAND**

-against-

THE CITY OF NEW YORK;
Commissioner MARTIN F. HORN;
GEORGE OKADA, Warden at Manhattan Detention Complex (MDC);
PRISON HEALTH SERVICES, INC. (PHS);
JASON HERSHBERGER, M.D, Assistant Commissioner,
Correctional Health Services, Department of Health and Mental Hygiene;
MARIA GBUR, M.D., Medical Director,
Correctional Health Services; ROBERT BERDING,
Director, Bureau of Regulatory Compliance
And Outcome, Correctional Health Services;
MICHAEL CATALANO, PHS Corporate Officer;
RICHARD HALLWORTH, PHS Corporate Officer;
REBECCA PINNEY, PHS Group Vice President
of Operations; "JOHN" WHEETER, MD,
PHS Chief Physician, MDC;
"JOHN" McCREADY, PHS Physician's Assistant
at MDC; ROBERTO CHAVEZ, PHS Mental Health
Clinician at MDC; MOHAMMAD AKHTAR,
PHS Physician, MDC; Captain SHARON SUMPTER, Shield
# 1370; Officer JOHN HEADEN, Shield # 13797;
Officer CHUDNEY WARREN-JAMES, Shield # 8388;
Captain SARDIA LEWIS, Shield # 264;
Officer JESUS VALENTIN, Shield # 1616;
Officer ARNULFO GROSSETT, Shield # 10752;
CORRECTION OFFICERS JOHN DOES #1-10;
PHS MEDICAL STAFF JOHN DOES #11-20;

Defendants.

------------------------------------------------------------------x

Plaintiff Hilda Livermore, as Administratrix of the Estate of her husband Oswald

1

Livermore, and on her own behalf, by her attorneys Emery Celli Brinckerhoff & Abady LLP, and

The Legal Aid Society, for her Complaint alleges as follows:

## PRELIMINARY STATEMENT

1.     This is an action against defendants for their tortious, illegal and

unconstitutional acts, which resulted in the untimely death of Oswald Livermore, a 51 year-old

employee of the United States Postal Service and married father of three children.  Mr.

Livermore was admitted to the Manhattan Detention Complex ("MDC"), 125 White Street,

County of New York, State of New York, on Wednesday, May 9, 2007.  He had been arrested

and charged with a Class B misdemeanor.  While Mr. Livermore was a prisoner in the custody,

care and control of the City of New York's Department of Correction ("DOC" or "the

Department"), DOC officers and medical staff, employed by Prison Health Services, denied and

delayed adequate medical treatment for Mr. Livermore.  In the middle of the night on Friday,

May 11, 2007, DOC staff used force on Mr. Livermore.  Mr. Livermore died on Friday, May 11,

2007, either during or immediately following the use of force incident.

2.     Defendants' actions were contrary to law, contrary to sound medical

practice, and contrary to the norms of a civilized society.  This complaint, arising from these

tragic, outrageous, and unlawful acts, seeks compensatory and punitive damages, costs,

disbursements and attorneys' fees pursuant to applicable state and federal civil rights law.

## THE PARTIES

3.     Oswald Livermore died while in the custody of the City of New York

Department of Correction, at the Manhattan Detention Complex, 125 White Street, County of

New York, State of New York.  All of the events giving rise to the complaint, including the death

of Mr. Livermore, occurred in New York, New York. At the time of his death, Mr. Livermore was a citizen of the United States and resided in New York, New York.

4.      Hilda Livermore is Mr. Livermore's wife and, on October 19, 2007, became the administratrix of his estate. Mrs. Livermore is a citizen of the United States and resides in New York, New York.

5.      Defendant City of New York ("City") is a municipal corporation which, through its Department of Correction ("DOC" or the "Department"), operates a number of detention jails. The Department of Health and Mental Hygiene, Correctional Health Services ("CHS") provides medical and mental health care through its contractor, Prison Health Services ("PHS") to inmates in the City jails, including MDC. The Departments of Correction and Health and Mental Hygiene, Correctional Health Services, through their senior officials at the central office and, in each facility, promulgates and implements policies, including those with respect to the provision of medical care, and access to medical and other program services mandated by local law and court orders. In addition, senior officials in both the Departments of Correction and Health and Mental Hygiene, Correctional Health Services, are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten policies or customs. The Departments of Correction and Health and Mental Hygiene, Correctional Health Services, are also responsible for the appointment, training, supervision, and conduct of all DOC and clinical personnel, including the defendants referenced herein.

6.      At all times relevant hereto, Martin Horn was the Commissioner of DOC,

3

acting in the capacity of agent, servant, and employee of defendant City, within the scope of his

employment as such, and acting under color of state law. On information and belief, Defendant

Horn, as Commissioner of DOC, was responsible for the policy, practice, supervision,

implementation, and conduct of all matters affecting DOC detainees and was responsible for the

training, supervision, and conduct of all DOC personnel and their contractors, including the

defendants referenced herein. As Commissioner, defendant Horn is also responsible for the care,

custody, and control of all inmates housed in the Department's jails. In addition, at all relevant

times, defendant Horn was responsible for enforcing the rules of the DOC, and for ensuring that

DOC personnel and its contractors obey the laws of the United States and of the State of New

York. Defendant Horn is sued in his individual capacity.

       7.    At all times relevant hereto, defendant Warden Okada was the Warden of

MDC, acting in the capacity of agent, servant, and employee of defendant City, within the scope

of his employment as such, and acting under color of state law. On information and belief,

Defendant Okada, as Warden of MDC, was responsible for supervising correction officers,

captains, and other supervisors with respect to the care, custody, and control of inmates confined

at MDC. These responsibilities were required to be carried out in a manner consistent with the

legal mandates that govern the operation of the NY DOCS facilities, including department

policies, procedures, directives and protocols. Defendant Okada is sued in his individual

capacity.

       8.    On information and belief, at all times relevant hereto, defendant Prison

Health Services, Inc. ("PHS") provides medical and mental health services to prisoners in the

NYC DOC correctional facilities, including MDC. In carrying out its duties, PHS was required

4

to ensure that the personnel it employed at MDC complied with all Department of Health and

Mental Hygiene, Correctional Health Services and Department of Correction policies,

procedures, directives and protocols in addition to all relevant local, state and federal statutes and

regulations.

        9.      At all times relevant hereto, defendant Hershberger was the Assistant

Commissioner, Correctional Health Services,  in the Department of Health and Mental Hygiene;

defendant Gbur was the Medical Director for Correctional Health Services; and defendant

Berding was the Director of the Bureau of Regulatory Compliance and Outcome for Correctional

Health Services.  Defendant Hershberger, Gbur and Berding are sued in their individual

capacities.  Defendants Hersbherger, Gbur and Berding were responsible for the promulgation,

review and implementation of agency policies with respect to the provision of medical and

mental health services to prisoners in the City jails.

        10.     On information and belief, at all times relevant hereto, defendants Michael

Catalano ("Catalano") and Richard Hallworth ("Hallworth") are PHS corporate officers,

Catalano as Chairman and Hallworth as President and Chief Executive Officer.  Their duties

included but were not limited to overseeing the operation of PHS and in particular, the care

provided by PHS's personnel employed at MDC.  Their responsibilities were required to be

carried out in a manner consistent with the legal mandates that govern the operation of  the New

York City jails, including Department of Correction and Department of Health and Mental

Hygiene, Correctional Services policies, procedures, directives and protocols, in addition to all

relevant local, state and federal statutes and regulations.  Defendants Catalano and Hallworth are

sued in their individual capacities.

11.     On information and belief, at all times relevant hereto, defendant Rebecca Pinney was PHS Group Vice President of Operations. Her duties included but were not limited to developing the medical care program for inmates in the care of PHS personnel, and for oversight and direction to jail-based PHS staff, including at MDC. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the New York City jails, including Department of Correction and Department of Health and Mental Hygiene, Correctional Services policies, procedures, directives and protocols, in addition to all relevant local, state and federal statutes and regulations. Defendant Pinney is sued in her individual capacity.

12.     On information and belief, at all times relevant hereto, defendant Mohammad Akhtar was a PHS physician at MDC. His duties included but were not limited to supervising the PHS staff employed at MDC, ensuring that staff provided adequate and competent care to inmates, and caring for all patients in MDC. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the New York City jails, including Department of Correction and Department of Health and Mental Hygiene, Correctional Services policies procedures, directives and protocols, in addition to all relevant local, state and federal statutes and regulations.

13.     On information and belief, at all times relevant hereto, defendant "John" (first name unknown) Wheeter, MD, was PHS Chief Physician at MDC. His duties included but were not limited to monitoring the day-to-day activities of PHS staff employed at MDC, and ensuring that staff provided adequate and competent care to inmates. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the

6

operation of the New York City jails, including Department of Correction and Department of Health and Mental Hygiene, Correctional Services policies procedures, directives and protocols, in addition to all relevant local, state and federal statutes and regulations.

14.    On information and belief, at all times relevant hereto, defendant "John" (first name unknown) McCready was a PHS Physician's Assistant at MDC. His duties included but were not limited to caring for all patients in their assigned areas at MDC and implementing appropriate plans to facilitate that care. Further, this defendant was required to supervise the nursing staff, evaluate the staff's performance, and to correct staff performance when necessary. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the New York City jails, including Department of Correction and Department of Health and Mental Hygiene, Correctional Services policies, procedures, directives and protocols, in addition to all relevant local, state and federal statutes and regulations.

15.    On information and belief, at all times relevant hereto, defendant Roberto Chavez was a PHS Mental Health Clinician at MDC. His duties included but were not limited to caring for all patients in their assigned areas at MDC and implementing appropriate plans to facilitate that care. Further, this defendant was required to supervise the nursing staff, evaluate the staff's performance, and to correct staff performance when necessary. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the New York City jails, including Department of Correction and Department of Health and Mental Hygiene, Correctional Services policies, procedures, directives and protocols, in addition to all relevant local, state and federal statutes and regulations.

16.    At all times relevant hereto, Defendant Sharon Sumpter, Shield # 1370, was a captain within the DOC and assigned to MDC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law.  On information and belief, Defendant Sumpter worked at MDC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the excessive force used against Mr. Livermore and/or the denial of adequate medical care to Mr. Livermore. Defendant Sumpter is sued in her individual capacity.

17.    At all times relevant hereto, Defendant Sardia Lewis, Shield # 264, was a captain within the DOC and assigned to MDC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law.  On information and belief, Defendant Sumpter worked at MDC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the excessive force used against Mr. Livermore and/or the denial of adequate medical care to Mr. Livermore. Defendant Lewis is sued in his individual capacity.

18.    At all times relevant hereto, Defendant John Headen, Shield # 13797, was an officer within the DOC and assigned to the MDC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law.  On information and belief, Defendant Headen worked at MDC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the excessive force used against Mr. Livermore and/or the denial of adequate medical care to Mr. Livermore. Defendant Headen is sued in his individual capacity.

19.    At all times relevant hereto, Defendant Chudney Warren-James, Shield #

8388, was an officer within the DOC and assigned to the MDC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law. On information and belief, Defendant Warren-James worked at MDC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the excessive force used against Mr. Livermore and/or the denial of adequate medical care to Mr. Livermore. Defendant Warren-James is sued in her individual capacity.

20.    At all times relevant hereto, Defendant Jesus Valentin, Shield # 1616, was an officer within the DOC and assigned to the MDC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Valentin worked at MDC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the excessive force used against Mr. Livermore and/or the denial of adequate medical care to Mr. Livermore. Defendant Valentin is sued in his individual capacity.

21.    At all times relevant hereto, Defendant Arnulfo Grossett, Shield # 10752, was an officer within the DOC and assigned to the MDC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Grossett worked at MDC at the time of the incidents alleged herein, and participated or witnessed and failed to intervene in the excessive force used against Mr. Livermore and/or the denial of adequate medical care to Mr. Livermore. Defendant Grossett is sued in his individual capacity.

22.    At all times relevant hereto, Correction Officers John/Jane Does # 1-10, whose actual names and shield numbers plaintiff has been unable to ascertain notwithstanding

9

reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe" and

"Jane Doe," were officers of DOC, acting in the capacity of agents, servants, and employees of

defendant City, within the scope of their employment as such, and acting under color of state

law. On information and belief, Defendants John/Jane Does # 1-10 worked at MDC between

May 9, 2007 and May 11, 2007 and participated in the denial of adequate medical care to

plaintiff and/or the use of excessive force against plaintiff that took place on these dates.

Defendants John/Jane Does # 1-10 are sued in their individual capacities.

23.     At all times relevant hereto, John/Jane Does # 11-20, whose actual names

plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are

sued herein by the fictitious designation "John Doe" and "Jane Doe," were employees of PHS

whose duties included providing medical and mental health care for inmates at MDC, acting in

the capacity of employees of PHS and agents, and servants of CHS and the City, acting within

the scope of their employment as such, and acting under color of state law. On information and

belief, Defendants John/Jane Does # 11-20 worked at MDC between May 9, 2007 and May 11,

2007 and participated in the denial of adequate medical care to plaintiff that took place on these

dates. Defendants John/Jane Does # 11-20 are sued in their individual capacities.

24.     Defendants Sumpter, Headen, Warren-James, Lewis, Valentin, Grossett,

and John Does # 1-10 are hereinafter referred to as the "DOC Individual Defendants."

25.     Defendants Horn and Okada are hereinafter referred to as "DOC

Supervisory Defendants.

26.     Defendants Catalano, Hallworth, Pinney, Wheeter, Akhbar, McCreedy,

Chavez, Hershberger, Gbur, Berding, and John Does # 11-20 are hereinafter referred to

collectively as "the Medical Defendants."

## JURISDICTION AND VENUE

27.    This action arises under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988 and the state common law and constitution.

28.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction.

29.    The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

30.    Plaintiff demand trial by jury in this action.

## FACTUAL ALLEGATIONS

31.    On May 9, 2007, Mr. Livermore was arrested and charged with a Class B misdemeanor stemming from a family dispute.

32.    At the time of his arrest, Mr. Livermore was 51 years old.  He was employed by the United States Postal Service and had been for more than twenty-five years.

33.    Mr. Livermore stood five feet, six inches, and was blind in his right eye.

34.    Mr. Livermore entered the custody of DOC on Wednesday, May 9, 2007, at approximately 5:17 pm, and was held at the Manhattan Detention Complex ("MDC"), 125 White Street, County of New York, State of New York.

35.    When Mr. Livermore entered DOC custody on May 9, 2007, he underwent a physical examination and medical evaluation ("the intake medical screening"), performed by

11

defendant McCready and supervised by defendant Akhtar, between approximately 12:45 am and 4:00 am on May 10, 2007.

36.     The intake medical screening revealed that Mr. Livermore suffered from active and severe alcoholism.

37.     The intake medical screening revealed that Mr. Livermore was a current and chronic alcohol user.

38.     Despite the fact that the intake medical screening revealed that Mr. Livermore suffered from active and severe alcoholism, and thus was at risk for alcohol withdrawal syndrome or other related medical problems, Mr. Livermore was not provided with any medical treatment for his alcoholism or alcohol withdrawal.

39.     Upon information and belief, according to the official protocol for managing alcohol withdrawal at MDC in effect on May 9, 2007 ("the alcohol protocol"), for patients such as Mr. Livermore who report alcohol dependence, jail medical staff are required to generate an "Alcohol Withdrawal Sheet."

40.     Upon information and belief, defendants Akhtar and McCready failed to generate an Alcohol Withdrawal Sheet for Mr. Livermore upon his admission to MDC although one was required by the alcohol protocol and sound medical practice.

41.     The alcohol protocol requires that every patient with alcohol withdrawal issues must be placed in the infirmary setting.

42.     Following Mr. Livermore's admission to MDC and his intake medical screening, defendants Akhtar, McCready and John Does # 11-20 did not place Mr. Livermore in an infirmary setting where medical staff could monitor his condition and his withdrawal from

12

alcohol, although this was required by the alcohol protocol and sound medical practice.

43.    Instead, Mr. Livermore was assigned to the general population of the jail, to Housing Area 7 West.

44.    Mr. Livermore was also not provided with the standard medication, such as benzodiazepines, used to treat alcohol withdrawal, although this was also required by the alcohol protocol and sound medical practice.

45.    On May 10, 2007, DOC Officer White made a mental health referral for Mr. Livermore to be seen in the MDC clinic due to a "radical change" in behavior on Mr. Livermore's part.

46.    Following this referral, defendant Chavez evaluated Mr. Livermore in the MDC clinic at approximately 10:00 pm on May 10, 2007.

47.    Defendant Chavez noted in Mr. Livermore's chart that Mr. Livermore had a history of alcohol abuse.

48.    Alcohol withdrawal syndrome is a cluster of symptoms observed in persons who stop drinking alcohol following continuous and heavy consumption. Symptoms of alcohol withdrawal syndrome include insomnia, tremulousness, mild anxiety, gastrointestinal upset, headache, diaphoresis, palpitations, anorexia, visual, auditory, or tactile hallucinations, and seizures.

49.    Alcohol withdrawal delirium, or delirium tremens (DTs), is characterized by clouding of consciousness and delirium. Symptoms of delirium tremens include hallucinations, disorientation, confusion, tachycardia, hypertension, low-grade fever, agitation, and diaphoresis.

50.    Although Mr. Livermore presented to the clinic on May 10, 2007 as chronic and continuous alcohol abuser, and had been referred to the clinic on that date for "inappropriate behavior," defendant Chavez and Does # 11-20 failed to evaluate or treat the clear and present signs and symptoms of alcohol withdrawal in Mr. Livermore.

51.    Upon information and belief, defendant Chavez and Does # 11-20 failed to investigate why DOC staff had referred Mr. Livermore to the clinic for "inappropriate" behavior.

52.    Mr. Livermore required immediate medical attention to treat his alcohol withdrawal syndrome.  Nevertheless, defendant Chavez and Does # 11-20 provided Mr. Livermore with inadequate, and in fact, no medical treatment.

53.    Mr. Livermore was sent back to his cell with no medical treatment for his alcohol withdrawal syndrome.

54.    On May 10, 2007, at approximately 10:56 pm, an unknown DOC correctional officer again referred Mr. Livermore (for the second time in less than 3 hours) for treatment and evaluation at the MDC clinic due to Mr. Livermore's "bizarre behavior."

55.    Following this referral, defendant McCready, under the supervision of defendant Akhtar, evaluated Mr. Livermore in the MDC clinic at approximately 12:05 am on May 11, 2007.

56.    Although Mr. Livermore presented to the clinic on May 11, 2007 as chronic and continuous alcohol abuser, had been seen in the clinic two hours earlier due to a referral of "inappropriate behavior," and had been referred to the clinic yet again for "bizarre behavior," defendants McCready, Akhtar and Does 11-20  failed to evaluate or treat the clear and present signs and symptoms of alcohol withdrawal in Mr. Livermore.

14

57.     Upon information and belief, defendants McCready, Akhtar and Does 11-20 failed to investigate why DOC staff had referred Mr. Livermore to the clinic, for the second time that evening, for "bizarre" behavior.

58.     Upon referral to the clinic on May 11, 2007 at 12:05am, Mr. Livermore required immediate medical attention to treat his alcohol withdrawal syndrome. Nevertheless, defendants McCready, Akhtar and Does 11-20 provided Mr. Livermore inadequate, and in fact, no medical treatment.

59.     At approximately 12:50 am on May 11, 2007, defendant McCready, supervised by defendant Akhtar, directed that Mr. Livermore return to his cell in the housing area with no medical treatment for his alcohol withdrawal syndrome.

60.     Upon information and belief, when Mr. Livermore returned to his cell after visiting the clinic, at approximately 1:00 am on May 11, 2007, he became even more disoriented and disturbed due to his untreated alcohol withdrawal syndrome.

61.     Upon information and belief, defendants DOC officers Headen and Warren-James removed Mr. Livermore from his cell, at which time Mr. Livermore, obviously disoriented, confused and in acute distress, began running in a disturbed fashion about the common areas of housing area.

62.     At approximately 1:20 am on May 11, 2007, defendant Sumpter summoned an Emergency Services Unit "probe team," which consisted of a captain and correction officers in riot gear armed with batons.

63.     Minutes after being summoned by Captain Sumpter, a DOC probe team, consisting of defendants Lewis, Valentin and Grossettt among other officers, arrived in the

15

housing area.

64.    The members of probe team forcibly grabbed Mr. Livermore, restrained him, forced his arms behind his back, threw him forcibly to the floor face first, and then held him face down to the floor, and handcuffed his hands behind his back.

65.    None of the defendants intervened to prevent the assault on, or prevent further injury to, Mr. Livermore.

66.    By failing to intervene in order to stop this assault, these defendants demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Livermore.

67.    At no time did Mr. Livermore assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant the excessive use of force in his restraint. Mr. Livermore did not provoke his beating nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used. Defendants acted sadistically and maliciously and demonstrated deliberate indifference toward Mr. Livermore's rights and physical well-being.

68.    Upon information and belief, during this use of force and restraint, Mr. Livermore became motionless, unresponsive and stopped breathing.

69.    Defendant Sumpter summoned medical staff from the MDC clinic to the housing area in order to respond to the medical emergency.

70.    When defendant McCready and other medical staff from the MDC clinic arrived at the housing area, they found Mr. Livermore face down on the floor, in rear handcuffs, unresponsive.

71.    MDC medical staff including Dr. Akhtar commenced efforts to revive Mr.

16

Livermore.

72.     Upon information and belief, however, the housing area was not equipped with the correct emergency resuscitation equipment, which hindered medical staff's attempts to revive Mr. Livermore.

73.     At approximately 2:00 am, Emergency Medical Services arrived at the MDC housing area.

74.     Mr. Livermore was transported from MDC to NY Downtown Beekman Hospital, where he was pronounced dead at 2:40 am.

75.     Defendants failed and refused to provide Mr. Livermore with any treatment for his alcohol withdrawal and alcoholism, including infirmary care or medication, although such treatment was both medically necessary and required by the jail's own alcohol withdrawal protocol.

76.     As a result of defendants' failure to provide medical treatment to Mr. Livermore, Mr. Livermore experienced extreme pain and suffering, emotional distress and death.

77.     Defendants' conduct in failing and refusing to provide Mr. Livermore with any treatment for his alcohol withdrawal evidences defendants' deliberate indifference to Mr. Livermore's serious medical needs and defendants' cruel and unusual treatment in violation of the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

78.     As a result of all defendants' deliberate indifference, Mr. Livermore suffered extreme pain, emotional distress and death.

79.     The denial of adequate medical treatment was carried out by all defendants willfully, wantonly, maliciously and/or with such reckless disregard of the consequences as to

reveal a conscious indifference to the clear risk of death or serious bodily injury to Mr. Livermore.

80.     Upon information and belief, at all relevant times, defendants Horn, City of New York, Okada, PHS, Hershberger, Gbur, Berding, Catalano, Hallworth, Pinney, and Wheeter knew or should have known of the serious failures and life-threatening omissions in the medical care provided to inmates at MDC suffering from alcohol withdrawal syndrome or other alcohol-related illnesses, but failed to take sufficient steps to redress these problems and omissions.

81.     Upon information and belief, at all relevant times, defendants Horn, City of New York, Okada, PHS, Hershberger, Gbur, Berding, Catalano, Hallworth, Pinney, and Wheeter failed to remedy the serious failures and life-threatening omissions in the medical care provided to inmates at MDC suffering from alcohol withdrawal syndrome or other alcohol-related illnesses, created policies or customs that sanctioned the inadequate medical care that led to Mr. Livermore's death, or allowed such policies or customs to continue, provided grossly negligent supervision of the subordinates who failed to provide even minimally adequate medical care to Mr. Livermore, and failed to act on information indicating that a constitutionally inadequate standard of medical care was being provided to inmates at MDC who suffer from alcohol withdrawal syndrome or other alcohol-related illnesses.

82.     By these failures, defendants Horn, City of New York, Okada, PHS, Hershberger, Gbur, Berding, Catalano, Hallworth, Pinney, and Wheeter exhibited deliberate indifference to the rights of Mr. Livermore and other prisoners who required medical care at MDC for alcohol withdrawal syndrome or other alcohol-related illnesses.

83. Following an autopsy, the Office of Chief Medical Examiner termed Mr. Livermore's "cause of death" to be "cardiac arrhythmia complicating delirium tremens due to ethanol withdrawal complicating chronic alcoholism."

84. In the period between his admission to MDC and his death, Mr. Livermore suffered severe and significant conscious pain and suffering.

85. On October 19, 2007, Hilda Livermore received letters of administration from the Surrogate's Court of the County of New York to act as administratrix of Mr. Livermore's estate.

86. As a direct and proximate result of defendants' actions, Mr. Livermore suffered severe physical and emotional injury, pain and suffering, and was deprived of his life.

87. Hilda Livermore, in her own right, suffered emotional injuries, was deprived of her husband's future earnings and services in all respects, including but not limited to the loss of love, comfort, society, attention, services and support, and has incurred funeral and other expenses for her husband.

88. The acts of DOC Defendants, the DOC Supervisory Defendants and the Medical Defendants were reckless, willful, wanton, and malicious, thus entitling plaintiff to an award of punitive damages.

89. A written notice of claim, sworn to by Hilda Livermore, was served upon the defendants by personal delivery of the notice to the Comptroller's office at 1 Centre Street, New York, New York.

90. At least thirty days have elapsed since the service of the notices of claim, and adjustment or payment of the claim has been neglected or refused.

19

91.    This action has been commenced within one year after the happening of the events upon which the claims are based.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
(Against the City of New York, DOC Individual Defendants, the DOC Supervisory Defendants and the Medical Defendants)

92.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

93.    By reason of the foregoing, by using excessive force against Mr. Livermore, assaulting him, and by denying him adequate medical care, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

94.    The DOC Individual Defendants, and the Medical Defendants acted under and within the scope of their respective employments as DOC officers, supervisors, and/or CHS employed or contracted medical personnel.  Said acts by defendants were beyond the scope pretense and color of state law and in their individual and official capacities of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

95.    The DOC Supervisory Defendants acted under and within the scope of their respective employments as DOC supervisors.  Said acts by defendants were beyond the

20

scope pretense and color of state law and in their individual and official capacities of their

jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted

willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights

secured by 42 U.S.C. § 1983, and by the Fourth, Eighth and Fourteenth Amendments of the

United States Constitution.

        96.    As a direct and proximate result of the misconduct and abuse of authority

detailed above, plaintiff sustained the damages hereinbefore alleged.

### AS AND FOR A SECOND CLAIM FOR RELIEF
Assault and Battery
(Against the DOC Individual Defendants and the City of New York)

        97.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were

fully set forth at length herein.

        98.    In assaulting, battering, and threatening Mr. Livermore, the DOC

Individual Defendants, acting in their capacities as DOC officers, and within the scope of their

employment, each committed a willful, unlawful, unwarranted, and intentional assault and

battery upon Mr. Livemore.

        99.    The assault and battery by these defendants was unnecessary and

unwarranted in the performance of their duties as DOC officers and constituted an unreasonable

and excessive use of force.

        100.    Defendants, their officers, agents, servants, and employees were

responsible for the assault and battery upon plaintiff.  Defendant City, as employer of each of the

DOC Individual Defendants, is responsible for their wrongdoing under the doctrine of

*respondeat superior.*

101.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### AS AND FOR A THIRD CLAIM FOR RELIEF
Intentional Infliction of Emotional Distress
(Against All Defendants)

102.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

103.    Defendants engaged in extreme and outrageous conduct intentionally and recklessly causing severe emotional distress to Mr. Livermore.

104.    By reason of the foregoing, defendants are liable to plaintiff for the intentional infliction of emotional distress.

105.    Defendants, their officers, agents, servants, and employees were responsible for the intentional infliction of emotional distress suffered by Mr. Livermore. Defendant City, as employer of the DOC Individual Defendants and defendants Hershberger, Gbur, Berding, is responsible for their wrongdoing under the doctrine of respondeat superior. Defendant PHS, as employer of the PHS Individual Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

106.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
Negligent Infliction of Emotional Distress
(Against All Defendants)

22

107.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

108.    By reason of the foregoing, defendants are liable to Hilda Livermore, both in her capacity as administratrix and in her individual capacity, for the negligent infliction of emotional distress.

109.    Defendants, their officers, agents, servants, and employees were responsible for this negligent infliction of emotional distress.  Defendant City, as employer of the DOC Individual defendants and defendants Hershberger, Gbur, Berding, is responsible for their wrongdoing under the doctrine of <u>respondeat superior</u>.  Defendant PHS, as employer of the PHS Individual defendants, is responsible for their wrongdoing under the doctrine of <u>respondeat superior</u>.

110.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### Negligent hiring/training/retention of
### Employment Services
### (Against Defendants the City of New York and PHS)

111.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

112.    Defendant City, through the Departments of Correction and Health and Mental Hygiene, Correctional Health Services, owed a duty of care to Mr. Livermore to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that injury to plaintiff or to those in a like situation would

probably result from the foregoing conduct.

113.    Defendant PHS owed a duty of care to Mr. Livermore to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

114.    Upon information and belief, all of the DOC Individual Defendants and the Medical Defendants were unfit and incompetent for their positions.

115.    Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused plaintiff's injuries.

116.    Upon information and belief, defendant PHS's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused plaintiff's injuries.

117.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR AN SIXTH CLAIM FOR RELIEF
Wrongful Death
(Against All Defendants)

118.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

119.    By reason of the foregoing, the statutory distributees of Mr. Livermore's estate sustained pecuniary and non-economic loss resulting from the loss of love, comfort, society, attention, services and support.  Defendants are liable to plaintiff for the wrongful death of Mr. Livermore.

120.    As a consequence, plaintiff has suffered damages in an amount to be determined at trial.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
42 U.S.C. § 1983/Due Process
Brought In Hilda Livermore's Individual Capacity
(Against the DOC Individual Defendants, the DOC Supervisory Defendants and the Medical Defendants)

121.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

122.    Mrs. Hilda Livermore, in her individual capacity and as Mr. Livermore's wife, had a liberty interest in his familial companionship and society.

123.    By reason of the foregoing and by killing Mr. Livermore, defendants are liable to plaintiff in their individual capacities for depriving them of this liberty interest without due process of law.

124.    As a consequence, plaintiff has suffered damages in an amount to be determined at trial.

## AS AND FOR A EIGHTH CLAIM FOR RELIEF
New York State Constitution, Art. I, § 7
Brought In Hilda Livermore's Individual Capacity
(Against All Defendants)

125.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

126.    Hilda Livermore, in her individual capacity and as Mr. Livermore's wife, had a liberty interest in his familial companionship and society.

127.    By reason of the foregoing and by killing Mr. Livermore, defendants are liable to plaintiff in their individual capacities for depriving them of this liberty interest without due process of law, thus depriving her of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 7 of the New York Constitution.

128.    Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as City and/or DOC officers, agents, or employees.  Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers.

129.    Defendants, their officers, agents, servants, and employees were responsible for the deprivation of Hilda Livermore's state constitutional rights.  Defendant City, as employer of each of the DOC Individual Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.  Defendant PHS, as employer of the Medical Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

130.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

26

## AS AND FOR A NINTH CLAIM FOR RELIEF
New York State Constitution, Art. I, § 12
(Against All Defendants)

131.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

132.    By reason of the foregoing, by using excessive force against Mr. Livermore, assaulting him, by denying him adequate medical care , and killing him, defendants deprived him of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 12 of the New York Constitution.

133.    Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as City and/or DOC officers, agents, or employees.  Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Livermore of his constitutional rights secured by Article I, § 12 of the New York Constitution.

134.    Defendants, their officers, agents, servants, and employees were responsible for the deprivation of Mr. Livermore's state constitutional rights.  Defendant City, as employer of each of the Individual Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

135.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A TENTH CLAIM FOR RELIEF
Negligence
(Against All Defendants)

27

136.    Plaintiff repeats and realleges paragraphs 1 through 112 as if the same were fully set forth at length herein.

137.    Defendants owed a duty of care to Mr. Livermore as an inmate at MDC.

138.    Defendants breached the duty of care that they owed Mr. Livermore by using excessive force against him and by denying him adequate medical care.

139.    Defendants' breach of their duty of care was the proximate cause of Mr. Livermore's serious and unnecessary injuries, including severe pain and suffering and death.

140.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

(A)    an order awarding compensatory damages in an amount to be determined at trial;

(B)    an order awarding punitive damages against the Individual Defendants in an amount to be determined at trial;

(C)    reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

(D)    directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated: May 12, 2008
      New York, New York

                        EMERY CELLI BRINCKERHOFF
                        & ABADY LLP

                        Jonathan S. Abady (JA 5147)

Katherine Rosenfeld (KR 8525)
75 Rockefeller Plaza
New York, New York 10019
(212) 763-5000

THE LEGAL AID SOCIETY
Jonathan S. Chasan (JC 9018)
Mary Lynne Werlwas (MW 6403)
199 Water Street, 6th Floor
New York,  New York 10038
(212) 577-3530

*Counsel for Plaintiff Hilda Livermore*